IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CODEY HASLETT, | ) |
|         Plaintiff, | ) |
| v. | ) Case No.: |
| EMP SERV, LLC, | ) REQUEST FOR JURY TRIAL |
|         Defendant. | ) |

Serve Resident Agent:
Sean R. Simpson
7582 Audrain Road 395
Thompson, Missouri 65285

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Codey Haslett, and for his cause of action against the above-named Defendant, alleges and states as follows:

1. Plaintiff is, and at all times set forth below was a resident of Marceline, Missouri.

2. Defendant is a Minnesota limited-liability company, in good standing and doing business in the State of Missouri.

3. Defendant operates hog farms through the State of Missouri, including in Cooper County, Howard County, and Chariton County.

4. Defendant raises hogs at these farms and then ships hogs to slaughtering locations throughout the United States, including to Iowa and Minnesota.

5. Defendant works in an industry affecting interstate commerce.

6. Defendant employed fifty or more employees for each working day during twenty or more calendar workweeks in either 2017 or 2018.

1

7.      Defendant's farms in Cooper County and Howard County constitute sufficient contacts to subject Defendant to the personal jurisdiction of to the Western District of Missouri and to the Central Division thereof, pursuant to 28 U.S.C. § 1391 and Local Rule 3.2.

## **RETALIATION BASED ON EXERCISE OF RIGHTS GRANTED BY THE FAMILY MEDICAL LEAVE ACT, IN VIOLATION OF 29 U.S.C. § 2615** *et seq.*

8.      Plaintiff was hired by Defendant on or about December 16, 2017, to work on Defendant's hog farm.

9.      Plaintiff was first hired as a part-time worker, but later moved to full-time employment as a gestation technician.

10.     Plaintiff's spouse, LaShawna Haslett ("LaShawna") also worked for Defendant at the same hog farm.

11.     In March 2018, LaShawna suffered a work-related injury to her back.

12.     This injury became increasingly worse, ultimately resulting in LaShawna having to apply for and receive a leave of absence pursuant to the Family Medical Leave Act ("FMLA") on or about December 23, 2018.

13.     Pursuant to LaShawna's medical treatment, she would frequently have to make trips to the Columbia area for medical treatment from various specialists.

14.     Driving the long distance was painful for LaShawna because of her back injury.

15.     This led Plaintiff to also apply for and receive FMLA leave in order to transport and assist LaShawna.

16.     Both Plaintiff and LaShawna used their respective leaves intermittently in January 2019.

17. These absences created tension and difficulty at Defendant's farm.

18. Natasha Basche, the supervisor of both Plaintiff and LaShawna, would have to work directly with the hogs, rather than in her normal supervisory role, due to the absences.

19. Shortly after FMLA leave was applied for by Plaintiff, Basche began treating Plaintiff differently.

20. Basche would not offer Plaintiff training on additional assignments at Defendant's farm.

21. This training is essential to moving up within Defendant's workforce.

22. Basche routinely provided this training to other workers.

23. Plaintiff noted this and in early January 2019, requested that Basche provide Plaintiff with similar training.

24. Plaintiff did not receive such training, prompting him to ask Basche for this training several more time throughout January 2019.

25. On or about January 31, 2019, Basche gave another employee, Trevor Hess, his 90-day review.

26. Hess, of course, had been working for Defendant for only 90-days—much less time than Plaintiff had been employed by Defendant.

27. In that review, Basche told Hess that he would be receiving additional training in the coming weeks on several other assignments around Defendant's farm.

28. This was precisely the type of training Plaintiff had repeatedly requested.

29. Hess told Plaintiff that Hess had a good review, and suggested that Plaintiff could easily be trained at the same time Hess was scheduled to receive such training.

30. The following day, Plaintiff asked Basche to meet with him.

31. Plaintiff was apprehensive about meeting alone with Basche, because he felt Basche was not pleased with Plaintiff and LaShawna utilizing FMLA leave.

32. Plaintiff also anticipated that Basche might lie about Hess being promised additional training.

33. Plaintiff asked Hess to sit in on the meeting, which Hess did.

34. In the February 1, 2019 meeting, Plaintiff asked Basche for additional training.

35. Plaintiff stated that he had repeatedly asked Basche for this training the past month.

36. Plaintiff explained that Hess was to be receiving the additional training, even though Hess did not have as much service time as Plaintiff.

37. Basche told Plaintiff that Hess should never had discussed his review with Plaintiff.

38. Basche admitted that Hess would be receiving the precise training on new assignments that Plaintiff had repeatedly requested.

39. Basche told Plaintiff that he was "a good worker" but he has problems with his "behavior and attendance."

40. Plaintiff replied that he was taking care of LaShawna pursuant to FMLA leave.

41. Basche said that she "didn't have a problem with [Plaintiff] when he comes to work and does his job."

42. Plaintiff told Basche he was using approved FMLA for his absences.

4

43. Plaintiff told Basche that he planned on contacting Human Resources about being denied treatment because of absences covered by FMLA.

44. Basche became very upset and started crying.

45. Plaintiff and Hess left the meeting.

46. Basche then called her supervisor, Travis Plahn.

47. Plahn and Basche are in a romantic relationship.

48. Plaintiff was summoned to return to the office.

49. Plahn told Plaintiff he was being suspended pending an investigation into his insubordination arising from the meeting with Basche.

50. Plaintiff protested that he had not been insubordinate.

51. Plaintiff protested that he had brought legitimate concerns to his supervisor, Basche.

52. Plaintiff stated that Hess was present and would verify that Plaintiff had not yelled at Basche.

53. Plahn became very angry and began yelling at Plaintiff.

54. Plaintiff left the office to inform Hess that Plaintiff was being suspended and could not offer Hess a ride home.

55. Plaintiff then left Defendant's farm.

56. No employee of representative of Defendant ever contacted Plaintiff pursuant to an investigation into the incident.

57. On February 4, 2019, Plahn called Plaintiff.

58. Plahn told Plaintiff that he was being discharged from employment.

59. Plaintiff asked why he was being discharged.

60. Plahn told Plaintiff that Plahn did not have to give Plaintiff a reason for his discharge.

61. On March 15, 2019, Plaintiff mailed a Request for Service Letter.

62. Plaintiff received a response to letter on or about March 21, 2019.

63. In that letter, Plaintiff learned for the first time that Defendant had made a determination that Plaintiff committed misconduct arising from the meeting with Basche.

64. This determination had been made without ever contacting Plaintiff about what had occurred.

65. Plaintiff applied for unemployment benefits following his discharge from employment.

66. Defendant protested Plaintiff being awarded such benefits.

67. A telephone hearing regarding Plaintiff's seeking of unemployment benefits was held on March 27, 2019 and continued on April 25, 2019.

68. Plahn testified at that hearing on behalf of Defendant.

69. Plahn testified that Plaintiff did not get the additional training he had requested because of absences, and "some of that was FMLA."

70. Plahn also testified that Plaintiff using FMLA "put a strain" on Defendant.

71. Plahn admitted that another employee of Defendant had committed similar conduct to that which Plaintiff was being accused of and that employee had not been discharged from employment.

72. Human Resources representative Jan Dibbern also testified on behalf of Defendant.

73. Dibbern testified that Plaintiff had never been approved for FMLA leave.

74. However, Plaintiff had received a letter stating that "This communication...is to inform you that we have received and reviewed the certification forms and the leave has been approved."

75. That letter was signed by Dibbern.

76. Following the appeal, the denial of benefits was overturned upon a finding that Plaintiff was not discharged for misconduct connected with work.

77. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

78. Plaintiff engaged in activity provided by and protected by the FMLA.

79. This activity included requesting FMLA leave and using FMLA leave.

80. Defendant took adverse actions against Plaintiff.

81. These actions included, but are not limited to, refusing to provide Plaintiff training on additional assignments, failing to conduct a meaningful investigation before discharging Plaintiff, discharging Plaintiff, and protesting Plaintiff receiving unemployment benefits.

82. These actions were motivated by Plaintiff's exercise of rights granted by FMLA and Plaintiff's engaging in activity protected by FMLA.

83. As a direct and proximate result of Defendant's unlawful conduct outlined above, including wrongfully discharging Plaintiff from employment and refusing to rehire Plaintiff, Plaintiff has suffered irreparable injury, including monetary loss, lost salary and wages, lost employment benefits, and other compensation, as well as interest on these amounts calculated at the prevailing rate.

84. Defendant's actions were not performed in good-faith nor based on any reasonable grounds, entitling Plaintiff to an additional award of liquidated damages.

85. Plaintiff is also entitled to recover her reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action from Defendant.

WHEREFORE, the Plaintiff prays for judgment against the above-named Defendant for all damages allowable by law, for interest as allowed by law, for the costs of this action, for his attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Local Rule 38.1, Plaintiff requests a trial by jury in the United States District Court for the Western District of Missouri, Central Division (at Jefferson City), on all accounts and allegations of wrongful conduct alleged in this Complaint.

Respectfully submitted,

 */s/ Daniel L. Doyle*
Daniel L. Doyle, MO Bar No. 37305
Robert A. Bruce, MO Bar No. 69985
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas  66101
Telephone:  (913) 371-1930, ext. 109
Facsimile:  (913) 371-0147
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
ATTORNEYS FOR PLAINTIFF